United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| JON DERRICK NAVARRO, | ) Case No.: 5:11-cv-01700-LHK |
|---|---|
| Plaintiff, | ) |
| v. | ) ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |
| OFFICERS BRYAN STERKEL, CHRIS BELL, MIKE GARCIA, and CHRIS PILGER, Santa Clara Police Department, in their individual capacities, and DOES 1-10, | ) |
| Defendant. | ) |

Plaintiff Jon Derrick Navarro ("Plaintiff" or "Navarro") brings this action seeking damages against Officers Bryan Sterkel, Chris Bell, Mike Garcia, and Chris Pilger of the Santa Clara Police Department, and the City of Santa Clara ("Defendants") pursuant to 42 U.S.C. § 1983. Plaintiff alleges that he was unreasonably, and therefore unlawfully, detained and arrested by Defendants in violation of his Fourth Amendment rights. Additionally, Plaintiff alleges that Defendants used excessive force in the course of the unlawful detention. Before the Court is Defendants' partial motion for summary judgment on Plaintiff's wrongful arrest and wrongful detention claims. Defendants have not moved for summary judgment on Plaintiff's excessive force claim.

1

Pursuant to Civil Local Rule 7-1(b), the Court deems Defendants' motion suitable for decision without oral argument. The motion hearing set for August 9, 2012 is VACATED. However, the further case management conference on August 9, 2012 remains as set. Having considered the parties' submissions and arguments as well as the relevant law, the Court GRANTS Defendants' motion for partial summary judgment.

**I.      BACKGROUND**

On the night of April 7, 2009, Officer Sterkel was contacted by dispatch and advised that an armed robbery had occurred at the intersection of Space Park and Scott Boulevard in Santa Clara, California. Dep. of Bryan Sterkel ("Sterkel Dep.") 15:25-16:7, 21:4; *see also* Dep. of Chris Bell ("Bell Dep.") 10:12-19. Officer Sterkel responded to the scene and contacted the victim. Sterkel Dep. 16:8-14. The victim told Officer Sterkel that he has been robbed by an armed black man in his early 20s who was wearing a dark jacket and dark pants. Sterkel Dep. 17:25-18:4. Additionally, the victim informed Officer Sterkel that, after robbing him, the assailant hit him over the head with a gun and fled on foot, heading east on Space Park and then north on Alfred Street. Sterkel Dep. 18:9-17, 21:20-22:4.

After speaking with the victim, Officer Sterkel then began to drive east on Space Park to survey the area and look for the suspect. Sterkel Dep. 18:18-20, 19:14-24. Almost immediately, Officer Sterkel noticed a white Cadillac, driven by Plaintiff, moving slowly, well under the posted 25 mile per hour speed limit. Sterkel Dep. 19:8-13, 20:25-21:15. Officer Sterkel quickly became suspicious that this car, which was driving in an industrial area normally desolate at that time of night (10:30 p.m.), might be related to the robbery. Sterkel Dep. 20:25-21:9, 21:16-19. Accordingly, Officer Sterkel radioed dispatch to run a check on the Cadillac's license plates. Sterkel Dep. 22:19-23:3. While waiting for results to come back, Officer Sterkel followed the Cadillac, as it continued its slow drive through the normally deserted industrial area. Sterkel Dep. 23:4-12. As he was following the Cadillac, Officer Sterkel noticed that it was actually circling the block. Sterkel Dep. 23:13-23; *see also* Bell Dep. 14:6-13. Additionally, Officer Sterkel noticed that Mr. Navarro was talking on a hand-held radio. Sterkel Dep. 23:13-23; Bell Dep. 14:6-13.

2

Dispatch reported back to Officer Sterkel that the Cadillac's license plates matched the car, indicating that they had not been switched, nor was there any indication that the car had been stolen. Sterkel Dep. 22:19-23:3. According to Officer Sterkel, the fact that the license plates matched the Cadillac neither tempered nor heightened his suspicion. Sterkel Dep. 24:10-19. However, while following the car, Officer Sterkel also observed that Mr. Navarro was dark skinned and wearing a dark jacket and dark beanie. Sterkel Dep. 24:20-25:5. Thus, his appearance was similar to the robbery victim's description of his assailant. Sterkel Dep. 24:20-25:5. This information led Officer Sterkel to become even more suspicious that this car might somehow be related to the robbery. Sterkel Dep. 24:20-25:5.

Officer Sterkel continued to follow the Cadillac until it arrived back at the Scott and Space Park intersection, having completed a full circle of the block. Sterkel Dep. 25:6-17. At that point, Officer Sterkel decided to make an investigatory car stop, so he activated his police car's solid red lights. Sterkel Dep. 25:12-17. Despite seeing that he was being followed by a police car with its solid lights activated, Mr. Navarro did not pull over. Dep. of Jon Navarro ("Navarro Dep.") 76:1-7, 76:20-23; Sterkel Dep. 26:1-19; *see* Cal. Veh. Code § 2800.1 (West). Officer Sterkel continued to follow Navarro with his solid lights activated for about three-tenths of a mile before activating his flashing lights. Sterkel Dep. 26:8-19. Once the flashing lights were activated, Mr. Navarro pulled over. Sterkel Dep. 26:20-21; Navarro Dep. 79:3-12.

At this point, Officer Sterkel and Officer Bell, who had been following in his own police vehicle, approached the driver's side of the Cadillac on foot. Sterkel Dep. 26:22-27:2. Officer McElmurry simultaneously approached the passenger's side of the vehicle. Bell Dep. 17:13-22. Believing Mr. Navarro to be a suspicious person at that time, Officer Sterkel drew his sidearm as he approached the Cadillac, pursuant to police policy. Sterkel Dep. 28:6-22.

When he got to the Cadillac, Office Sterkel stood by the rear driver's side door for safety. Sterkel Dep. 29:3-9. From his vantage point Officer Sterkel had difficulties seeing into the car, particularly into Mr. Navarro's lap or into the passenger's seat, but he could see that Mr. Navarro had what appeared to be a portable radio in his lap. Sterkel Dep. 29:3-9, 29:25-30:3. At that point,

3

Officer Sterkel asked Mr. Navarro to put his hands on the steering wheel. Sterkel Dep. 30:3-5. Mr. Navarro complied. Sterkel Dep. 30:15-17; Navarro Dep. 108:12-16.

It is undisputed that shortly after placing his hands on the steering wheel, Mr. Navarro removed his hands from the steering wheel. Navarro Dep. 108:17-24; Sterkel Dep. 30:18-23. Mr. Navarro then began to fumble with the radio between his legs. Sterkel Dep. 30:18-23. Officer Sterkel ordered Mr. Navarro to put his hands back on the steering wheel. Sterkel Dep. 33:1-4. Mr. Navarro did not comply and instead continued to fumble with the radio between his legs. Moreover, Mr. Navarro also began fumbling with something in the passenger's seat. Sterkel Dep. 33:7-13. According to Officer Sterkel, Mr. Navarro turned his shoulder to block Officer Sterkel's view in a way that appeared intentional. Sterkel Dep. 33:7-13. The police officers continued to tell Mr. Navarro, firmly, to put his hands back on the wheel. Sterkel Dep. 33:1-4; Navarro Dep. 109:20-23; *see* Bell Dep. 22:5-16. After some time, Mr. Navarro complied and placed his hands on the steering wheel. Sterkel Dep. 34:8-15; Navarro Dep. 109:20-23. According to Officer Sterkel, Mr. Navarro then removed his hands a second time and again fumbled with the object in his lap. Sterkel Dep. 34:8-20. Mr. Navarro denies that he removed his hands a second time. Navarro Dep. 109:24-25.

Officer Sterkel suspected Mr. Navarro of being a getaway driver for the earlier armed robbery and believed that he might have a firearm. Sterkel Dep. 34:21-25. On this basis, Officer Sterkel pressed his gun to Mr. Navarro's temple and pulled him back in the car seat so that he could see Mr. Navarro's hands. Sterkel Dep. 35:1-6. At this point, the police offers decided that Mr. Navarro was not responding to verbal instructions, so they decided to remove him from the car. Sterkel Dep. 35:18-22. Officer Bell then opened the driver's door, and Officers Sterkel and Bell repeatedly told Mr. Navarro to get out of the car. Sterkel Dep. 35:23-36:3, 36:10-23. Mr. Navarro did not comply. Sterkel Dep. 36:1-2. Finally, Officer Bell yanked him out of the car. Sterkel Dep. 36:2-3. Mr. Navarro was then placed under arrest for obstructing the police investigation. Sterkel Dep. 27:12-22, 43:5-9; Bell Dep.13-21.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *See id*. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Id*. at 254. The question is "whether a jury could reasonably find either that the [moving party] proved his case by the quality and quantity of evidence required by the governing law or that he did not." *Id*. "[A]ll justifiable inferences must be drawn in [the nonmovant's] favor." *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (citing *Liberty Lobby*, 477 U.S. at 255).

The moving party bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatory answers, admissions and affidavits, if any, that it contends demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [that] party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e); *see also Liberty Lobby*, 477 U.S. at 250. The opposing party need not show the issue will be resolved conclusively in its favor. *See Liberty Lobby*, 477 U.S. at 248–49. All that is necessary is submission of sufficient evidence to create a material factual dispute, thereby requiring a jury or judge to resolve the parties' differing versions at trial. *See id.*

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party, but on an issue for which the opposing party will have the burden of proof at trial, the party moving for summary judgment need only point out "that there is an absence of evidence

5

to support the nonmoving party's case." *Id.* at 325; *accord Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Once the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250.

## III. DISCUSSION

A plaintiff asserting a claim under § 1983 must demonstrate that (1) the action occurred "under color of state law," and (2) the action resulted in the deprivation of a constitutional or federal statutory right. *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988) (internal citations omitted); 42 U.S.C. § 1983 (2006) (Section 1983 imposes civil liability on any person who, under color of state law, "subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."). The parties do not dispute that the officers were acting under color of state law. They dispute only whether Defendants violated Plaintiff's Fourth Amendment rights by (1) conducting a Terry Stop of Navarro's vehicle; and (2) arresting Navarro for resisting arrest. Because Navarro bears the burden of proof at trial on his § 1983 claims, Defendants, as the moving party, bear the initial burden on summary judgment of pointing out "an absence of evidence to support [Navarro's] case." *Celotex Corp.*, 477 U.S. at 325.

### A. The Stop of Navarro's Car

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." The level of justification required to render a seizure constitutionally reasonable depends on the nature of the seizure. In general, the level of protection afforded by the Fourth Amendment increases with the invasiveness of the search or seizure. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968) (quoting *Camara v. Municipal Court*, 387 U.S. 523, 536-37 (1967)) ("[T]here is 'no ready test for determining reasonableness other than by balancing the need to search (or seize) against the invasion which the search (or seizure) entails.'"). In order to conduct "brief investigatory stops of persons or vehicles that fall short of traditional arrest," for instance, the Fourth Amendment only requires that a police officer

1   have "reasonable suspicion to believe that criminal activity 'may be afoot.'" *United States v.*

2   *Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

3       Although the "reasonable suspicion" standard is a relatively low threshold, the Fourth

4   Amendment does require "some minimum level of objective justification" for the stop. *See*

5   *Sokolow*, 490 U.S. at 7 ("[Reasonable suspicion] is considerably less than proof of wrongdoing by

6   a preponderance of the evidence."); *INS v. Delgado*, 466 U.S. 201, 217 (1984). Indeed, reasonable

7   suspicion requires "a particularized and objective basis for suspecting the particular person stopped

8   of a criminal activity." *United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir. 2000) (citing

9   *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000)). Nevertheless, the "reasonableness"

10  of a police officer's decision to detain an individual "must be seen and weighed not in terms of

11  library analysis by scholars, but as understood by those versed in the field of law enforcement."

12  *United States v. Cortez*, 449 U.S. 411, 418 (1981).

13      As an initial matter, the Court determines that the Terry Stop occurred when Mr. Navarro

14  pulled his car over, not when Officer Sterkel activated the solid red lights of the police car. The

15  Supreme Court has clarified that a Fourth Amendment seizure does not occur until an individual

16  *complies with* a police command to stop. *California v. Hodari D.*, 499 U.S. 621, 628-29 (1991).

17  *Id.* Because Mr. Navarro did not comply with Officer Sterkel's order to pull over until after

18  Officer Sterkel activated his *flashing* lights, Plaintiff's initial failure to pull over necessarily took

19  place *before* the detention. Thus, Mr. Navarro's initial failure to pull over may be considered when

20  determining whether Officer Sterkel had "reasonable suspicion" to conduct the Terry stop.

21      Plaintiff argues that Defendants perpetrated an unlawful seizure when they pulled him over

22  because they lacked reasonable suspicion that criminal activity may be afoot. Opp'n at 5, ECF No.

23  32. In particular, Plaintiff argues that Defendants had no reasonable basis for assuming that he was

24  in any way connected to the reported robbery. *Id.* The Court disagrees.

25      Officer Sterkel's decision to stop Navarro's car was based on a number of objective facts,

26  aside from Mr. Navarro's perceived race, which together rose to the level of "reasonable

27  suspicion." The parties do not dispute that Plaintiff was driving slowly, late at night, in an area that

28  is typically abandoned. Moreover, the parties do not dispute that Plaintiff was circling an area near

7

Case No.: 5:11-CV-01700-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

the scene of a robbery, in the direction that the suspect reportedly fled, shortly after the robbery occurred. Officer Sterkel observed Mr. Navarro talking on a hand-held radio, possibly in communication with the assailant. Finally, Mr. Navarro initially failed to pull over after Officer Sterkel had activated his solid lights. Based on a totality of circumstances, these facts more than constitute the "minimum level of objective justification" required for reasonable suspicion. *See Delgado*, 466 U.S. at 217.

Mr. Navarro argues that Defendants were not told that the assailant of the robbery escaped in an automobile or that there was an accomplice to the robbery. These facts do not undermine Officer Sterkel's decision to conduct an investigatory stop. Police officers are allowed to draw inferences from facts that support a finding of reasonable suspicion. *See Texas v. Brown*, 460 U.S. 730, 742-43 (1983); *cf. Cortez*, 449 U.S. at 418. In this case, Officer Sterkel relied on his experience as a police officer in concluding that robberies sometimes involve getaway drivers. *See* Sterkel Dep. 20:25-21:19. "As understood by those versed in the field of law enforcement," the other facts known to Officer Sterkel at the time of the stop discussed above, constituted reasonable suspicion, rendering Plaintiff's detention lawful. *See Cortez*, 449 U.S. at 418.

Plaintiff has failed to demonstrate the existence of a genuine issue of material fact. Officer Sterkel had reasonable suspicion to conduct an investigatory stop and therefore the detention did not violate Plaintiff's Fourth Amendment rights. In light of this conclusion, the Court need not address Defendants' alternative argument that Defendants are entitled to qualified immunity because their conduct did not violate a clearly established constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Accordingly, Defendants' motion for partial summary judgment with respect to Plaintiff's detention is GRANTED.

**B. Navarro's Arrest**

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment." *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 964 (9th Cir. 2001); *accord Lacey v.*

*Maricopa Cnty.*, 649 F.3d 1118, 1131 (9th Cir. 2011). To prevail on such a claim, a plaintiff must demonstrate that the officers lacked probable cause to arrest him. *Norse v. City of Santa Cruz*, 629 F.3d 966, 978 (9th Cir. 2010).

While the "probable cause" standard is more demanding than the "reasonable suspicion" standard, its boundaries are no better defined. *See Sokolow*, 490 U.S. at 7 ("[T]he level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause." (citation omitted)). The Supreme Court has held that "probable cause" requires "a fair probability that contraband or evidence of a crime will be found." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). To determine whether an arrest is supported by probable cause, the Court must consider "the totality of the circumstances known to the arresting officers" at the time of the arrest. *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008). "'Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part.'" *McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)).

Mr. Navarro was arrested on charges of violating California Penal Code § 148. California Penal Code § 148, Resisting, Delaying, or Obstructing an Officer, renders it a punishable offense to "willfully resist[], delay[], or obstruct[] any public officer . . . in the discharge or attempt to discharge any duty of his or her office or employment." Cal. Pen. Code § 148. Although the criminal case against Mr. Navarro was later dismissed, Mr. Navarro suffered no constitutional violation if probable cause existed at the time of his arrest. *See Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979); *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).

Defendants argue that Plaintiff's arrest, like his detention, was reasonable in light of the totality of the circumstances. MSJ at 8. According to Defendants, Plaintiff's refusal to comply with police instructions gave them the probable cause required for arrest under Cal. Pen. Code § 148 and the Fourth Amendment. *Id.*; *see also* Cal. Penal Code § 148(a)(1). Plaintiff argues that there is a factual dispute regarding the extent to which Defendants' commands provoked Plaintiff's nervous behaviors, which were interpreted by Defendants as "resistance." Navarro Dep. 109:10-12.

While Plaintiff is correct that there are disputed facts surrounding his arrest, none of the disputed facts are material. The undisputed facts alone provide sufficient basis for Defendants to prevail on summary judgment. In particular, the undisputed fact that Plaintiff removed his hands from the steering wheel, in direct disobedience of repeated police orders, is sufficient to establish criminal liability under § 148 and therefore probable cause for arrest under the Fourth Amendment. Navarro Dep. 108:17-19; Sterkel Dep. 30:18-23; *see also Young v. Cnty. of L.A.*, 655 F.3d 1156, 1170 (9th Cir. 2011) (finding that failure to comply with a police order to re-enter a vehicle at a traffic stop constituted a violation of § 148); Cal. Penal Code § 148. Indeed, in his deposition, Plaintiff acknowledges both that he failed to pull over after seeing Defendant Sterkel's solid lights and that he removed his hands from the steering wheel, thereby disobeying police instructions. *See* Sterkel Dep. 76:20-23, 108:17-24. These instances of disobedience alone provide grounds for a reasonable officer to find probable cause that Plaintiff was in violation of § 148. Accordingly, the factual disputes identified by Plaintiff are immaterial, and do not constitute a basis for denying Defendants' motion for partial summary judgment.

Plaintiff also cites to two cases that he argues establish that the level of his "resistance" to police instructions precludes granting summary judgment in Defendants' favor. First, relying on *People v. Quiroga*, Plaintiff argues that § 148 does not criminalize "a person's failure to respond with alacrity to police orders." 16 Cal. App. 4th 961, 966 (1993). Second, Plaintiff argues that there is a recognized First Amendment protection for "a significant amount of verbal criticism and challenge directed at police officers." *Houston v. Hill*, 482 U.S. 451, 461 (1987). Thus, Plaintiff argues that *Quiroga* and *Houston* stand for the proposition that § 148 does not apply to minor deviations from police instructions.

However, both *Quiroga* and *Houston* are inapposite to the present case. As the Ninth Circuit explained in *Young v. Cnty. of L.A.*, *Quiroga* applied to an individual who ultimately *complied* with a police command, albeit slowly; *Quiroga* does not apply to a situation where an individual fails to comply with a police command altogether. 655 F.3d at 1170. Indeed, the *Young* court reaffirmed the "value of giving officers control over the movement of people involved in a traffic stop in order to limit the risk of danger to the police" and held that police commands issued

Case No.: 5:11-CV-01700-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

pursuant to such a goal are lawful under § 148 and therefore must be obeyed. *Id.* at 1169-70 (internal quotation marks and citation omitted). Nor is Plaintiff's reliance on *Houston* persuasive. Plaintiff has presented no evidence from which a reasonable jury could conclude that Plaintiff was resisting a police order as a form of expression or protest. Indeed, Plaintiff himself admitted that he took his hands off the steering wheel, against police instructions, because he "just was terrified" due to "all the yelling." Navarro Dep. 108:17-24. In sum, Plaintiff's failure to comply with police commands was not an "act of expression protected by the First Amendment, but rather . . . simple failure to obey a police officer's lawful instructions." *Young*, 655 F.3d at 1170.

Drawing all inferences in favor of Plaintiff as the non-moving party, no reasonable jury could find that the arrest violated Plaintiff's Fourth Amendment rights. In light of this conclusion, the Court need not address Defendants' alternative argument that Defendants are entitled to qualified immunity because their conduct did not violate a clearly established constitutional right. Accordingly, Defendants' motion for partial summary judgment with respect to Plaintiff's arrest is GRANTED.

### C. *Monell* Liability

In order to establish that the City[1] is liable for a constitutional violation, Plaintiff must show that a policy, custom, or practice of the City was the "moving force" behind any such alleged constitutional injury. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *accord Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). The Ninth Circuit has made clear that "'liability for improper custom may not be predicated on isolated or sporadic incidents.'" *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (internal quotation marks and citations omitted)). Rather, to hold a government entity liable under § 1983, a plaintiff must show that the alleged unconstitutional act results from "(1) an employee acting pursuant to an expressly adopted official policy; (2) an employee acting pursuant to a longstanding practice or custom; or (3) an employee

---

[1] Plaintiff's Complaint erroneously named the Santa Clara Police Department, instead of the City of Santa Clara. See Answer, ECF No. 30.

acting as a 'final policymaker.'"  *Delia v. City of Rialto*, 621 F.3d 1069, 1081-82 (9th Cir. 2010) (quoting *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003)).

Here, Plaintiff's claim against the City fails for two reasons.  First, Plaintiff has not shown that his constitutional rights were violated, and therefore his claim against the City necessarily fails.  *See Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1021 (9th Cir. 2010) ("Because we hold that there was no underlying constitutional violation, [plaintiffs] cannot maintain a claim for municipal liability."); *see also City of L.A. v. Heller*, 475 U.S. 796, 799 (1986) (per curiam).  Second, even if he were to establish a violation of his constitutional rights, Plaintiff has provided no evidence that there is an official City policy or custom of detaining and arresting individuals without reasonable suspicion and probable cause.  Navarro has therefore failed to create a genuine issue of material fact as to any element of his § 1983 claim against the City.  Defendants' motion for partial summary judgment with respect to the *Monell* claim against the City for Plaintiff's detention and arrest is accordingly GRANTED.

## IV.   CONCLUSION

For the reasons discussed above, the Court GRANTS Defendant's motion for partial summary judgment with respect to Plaintiff's detention and arrest.  The hearing on the motion for partial summary judgment is VACATED.  However, the further case management conference on August 9, 2012 remains as set.

**IT IS SO ORDERED.**

Dated: August 7, 2012

_____
LUCY H. KOH
United States District Judge

Case No.: 5:11-CV-01700-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT